Craig M. Peters (SBN 184018)
Jasleen Singh (SBN 315315)
**ALTAIR LAW**
465 California Street, 5th Floor
San Francisco, CA 94104-3313
Telephone: (415) 988-9828
Email: cpeters@altairlaw.com
Email: jsingh@altairlaw.com

David L. Fiol (SBN 203546)
**BRENT & FIOL, LLP**
1000 Fourth Street, Suite 580
San Rafael, CA  94901
Telephone: (415) 839-8370
Email: dfiol@brentfiol.com

*Attorneys for Plaintiff Daymond Maurice Dixon*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYMOND MAURICE DIXON,<br><br>              Plaintiff,<br><br>      vs.<br><br>CITY OF PITTSBURG, PITTSBURG POLICE OFFICER GERRY GRANER, PITTSBURG POLICE OFFICER JORDAN McCRARY, PITTSBURG POLICE OFFICER JORGE MELGOZA JR., CITY OF PITTSBURG POLICE CORPORAL GERRIT VAN ROOYEN; CALIFORNIA HIGHWAY PATROL OFFICER ANDREY LESNYAKOV, and DOES 1-20,<br><br>              Defendants. | Case No. 3:25-cv-6116<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>**(1)  FALSE ARREST (42 U.S.C. § 1983)**<br>**(2)  CALIFORNIA CIVIL CODE §52.1**<br>**(3)  CALIFORNIA CIVIL CODE § 51.7**<br>**(4)  COMMON LAW FALSE ARREST**<br>**(5)  COMMON LAW NEGLIGENCE**<br>**(6)  COMMON LAW NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DAYMOND MAURICE DIXON by and through his attorneys, ALTAIR LAW and

BRENT & FIOL, LLP, for his FIRST AMENDED COMPLAINT against defendants, states as follows:

## I.      INTRODUCTION

1. On October 10, 2024, defendant PITTSBURG POLICE OFFICER GERRY GRANER

("GRANER") improperly arrested plaintiff DAYMOND MAURICE DIXON ("PLAINTIFF") based

on a false stolen vehicle report.

2. PLAINTIFF, a disabled African American male who walks with a cane, was waiting at an

auto repair shop for his car to be repaired when the owner and mechanic, a Mr. Howard, who also was

1

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

African American, requested that PLAINTIFF drive one of the shop's cars to a nearby auto parts store to purchase parts. As PLAINTIFF entered the car and began to drive to the store, GRANER boxed PLAINTIFF in with his patrol vehicle, approached PLAINTIFF on foot and immediately handcuffed PLAINTIFF, before asking a single question.

3. Upon information and belief, GRANER, or an automatic system on his vehicle, ran a search on the vehicle's plates, and it was listed as stolen based on a false report that was improperly accepted and published by defendant CHP OFFICER ANDREY LESNYAKOV ("LESNYAKOV").  However, PLAINTIFF repeatedly explained to GRANER that he was only temporarily using the SUBJECT VEHICLE with Mr. Howard's express permission, and Mr. Howard repeatedly told GRANER that he was the titled and registered owner - a fact that GRANER and the other officers were able to confirm.

4. GRANER blatantly ignored his department's procedures, which state that when control over or title to a vehicle is in dispute, officers "may review documents provided by parties or available databases (e.g., vehicle registration), but, "Generally, officers should not take any enforcement action unless a crime is apparent."  Although GRANER witnessed no crime,  Howard was the registered owner, everything said to him at the scene indicated the vehicle was *not* stolen, and even if it was *PLAINTIFF* was not responsible, GRANER chose to act solely on a hearsay, false report and arrested PLAINTIFF for violating Penal Code Section 496d(a).  To date, the DA has not filed charges.

5. Defendants PITTSBURG POLICE OFFICER JORDAN MCCRARY ("McCRARY") and PITTSBURG POLICE OFFICER JORGE MELGOZA JR., ("MELGOZA") backed up GRANER at the scene and, despite knowing there was insufficient evidence to establish probable cause to arrest PLAINTIFF, stood by and did nothing to intervene.

6.  Defendant PITTSBURG POLICE CORPORAL GERRIT VAN ROOYEN ("VAN ROOYEN"), despite having received insufficient information to conclude there was probable cause to arrest PLAINTIFF, illegally ratified GRANER's decision to proceed with the arrest.

## II.     JURISDICTION

7. Subject matter jurisdiction over the claims stated in this action is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because

2

they arise out of the same case or controversy under Article III of the United States Constitution.

## III.    INTRADISTRICT ASSIGNMENT

8. All of the events and/or omissions complained of herein occurred in Contra Costa County, and this action is properly assigned to the Oakland or San Francisco Division.

## IV.    FACTS COMMON TO ALL CAUSES OF ACTION

### A.  PARTIES

9. PLAINTIFF is and at all relevant times was a resident of Contra Costa County, State of California.  At the time of the incident he was fifty-nine (59) years old.

10. Defendant CITY OF PITTSBURG (hereinafter "PITTSBURG") was at all relevant times a municipal corporation organized under the laws of the State of California.

11. Defendants GRANER, McCRARY and MELGOZA and VAN ROOYEN and DOE defendants 1 through 10 were at all relevant times employed by defendant PITTSBURG to work as uniformed police officers and corporals, subject to oversight and supervision by PITTSBURG elected and non-elected officials, and acted under the color of the laws, statutes, ordinances, regulations, policies, and customs of the State of California.

12. Defendant CALIFORNIA HIGHWAY PATROL OFFICER ANDREY LESNYAKOV (hereinafter "LESNYAKOV") was at all relevant times employed by the State of California and the California Highway Patrol to work as a uniformed CHP officer, subject to oversight and supervision by the State of California and the California Highway Patrol elected and non-elected officials, and acted under the color of the laws, statutes, ordinances, regulations, policies, and customs of the State of California.

13. At all times mentioned herein, the defendants, DOES 1 through 10, inclusive, and each of them, were the supervisors, and/or fellow servants of the GRANER, and/or policy-making officials of PITTSBURG who are legally responsible in some manner for the events and happenings referred to here, and proximately and legally caused injury and damage to PLAINTIFF as alleged here. The true names and capacities, whether individual or otherwise of Defendants DOES 1 through 10 inclusive, are unknown to PLAINTIFF, who therefore sues Defendants by such fictitious names; and leave of court will be requested to amend this complaint to show their true names and capacities when the same have

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

become ascertained.

14. At all times mentioned herein, the defendants, DOES 11 through 20, inclusive, and each of them, were the supervisors (Commissioners, Deputy Commissioners, Assistant Commissioners, Chiefs, Assistant Chiefs,  Captains, Lieutenants, Sergeants), fellow officers, and/or fellow servants of defendant LESNYAKOV who are legally responsible in some manner for the events and happenings referred to here, and proximately and legally caused injury and damage to PLAINTIFF as alleged here. The true names and capacities, whether individual or otherwise of Defendants DOES 11 through 20 inclusive, are unknown to PLAINTIFF, who therefore sues Defendants by such fictitious names; and leave of court will be requested to amend this complaint to show their true names and capacities when the same have become ascertained.

15.  On February 20, 2025, PLAINTIFF filed a claim for damages with PITTSBURG in compliance with the California Government Code § 900 *et seq*.   That claim was submitted within the time periods prescribed by California Government Code §§ 911.2 and 945.6.  PITTSBURG has not responded to PLAINTIFF's claim.  The claim therefore is deemed denied pursuant to California Government Code § 912.4(c).

16. On April 1, 2025, PLAINTIFF filed a claim for damages with the State of California against the California Highway Patrol in compliance with the California Government Code § 900 *et seq*.   That claim was submitted within the time periods prescribed by California Government Code §§ 911.2 and 945.6.  The State of California has not responded to PLAINTIFF's claim.  The claim therefore is deemed denied pursuant to California Government Code § 912.4(c).

**B.  MATERIAL FACTS**

17. In or around April of 2024, Mr. Darrell Howard, a California resident with ties to Ohio, purchased a black 2001 Chrysler PT Cruiser (hereinafter "SUBJECT VEHICLE") in the name of his Ohio-based car repair business, Howards Auto Body.

18. On or around May 5, 2024, Mr. Howard sold the SUBJECT VEHICLE to Anthony Morehouse on a payment plan.  The sale price was $1,500: $600 to be paid immediately and $900 by June 3, 2024.  Until full payment was made, title remained in the name of Howards Auto Body.

19. Mr. Morehouse did not pay the $900 balance due on June 3, 2024, or any time after that,

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

although Mr. Howard asked him to do so repeatedly.

20. As a result of Mr. Morehouse's failure to complete payment, Mr. Howard repossessed the SUBJECT VEHICLE. Title of the SUBJECT VEHICLE remained in the name of Howards Auto Body, as Mr. Morehouse never completed his end of the bargain.

21. Mr. Morehouse complained to and threatened Mr. Howard but made no effort to pay the $900 balance, nor did Mr. Morehouse try to regain possession of the SUBJECT VEHICLE or seek to transfer title.  Mr. Howard understood the matter to be closed.

22. On or about June 16, 2024, at 10:00 PM, unbeknownst to Mr. Howard, Mr. Morehouse placed a call to a local CHP office and reported the SUBJECT VEHICLE stolen. LESNYAKOV handled the call from Mr. Morehouse and responded to the scene.  Mr. Morehouse claimed he bought the SUBJECT VEHICLE from a local auto body shop a few days before, and that it had been stolen from in front of his apartment. However, Mr. Morehouse was not the registered owner and legal owner for the SUBJECT VEHICLE, Howards Auto Body Shop was.

23. Mr. Morehouse presented to LESNYAKOV no evidence of ownership such as bills, receipts, sale documents, contracts, agreements, insurance paperwork, or signed transfers of title or registration, yet the same day Morehouse placed his call, defendant LESNYAKOV entered the SUBJECT VEHICLE as stolen into the Department of Justice (DOJ) Stolen Vehicle System (SVS).

24. Before imputing the stolen vehicle report into the database, LESNYAKOV learned that according to State of Ohio records, the titled owner of the SUBJECT VEHICLE was not Anthony Morehouse, but instead the Ohio car repair business owned by Mr. Howard, Howard's Auto Body.

25. Notwithstanding the suspicious inconsistency between state records and Mr. Morehouse's claim of ownership, LESNYAKOV did not caution or warn Mr. Morehouse of the criminal and legal consequences of falsely reporting a vehicle stolen, nor did he follow up to obtain supporting documentation from Mr. Morehouse to prove his claim of ownership.

26. Moreover, LESNYAKOV made no effort to obtain form Morehouse information sufficient for him to locate the person or entity that purportedly sold him the SUBJECT VEHICLE.

27. For nearly four months, until the date of PLAINTIFF'S arrest, defendant LESNYAKOV had ample time to conduct additional investigation and to modify, retract, or withdraw the stolen vehicle

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND     Case No. 3:25-cv-6116

report, but he did nothing further to investigate Morehouse's claims of ownership.

28. On October 10, 2024, PLAINTIFF, a fifty-nine (59) year old African American man who walks with a limp and a cane due to a back disability, went to Mr. Howard's car repair shop at 1592 Willow Pass Road, Pittsburg, CA 94565 to have repairs done on his car. With him was his cousin Eric and his registered emotional support dog, Koko.

29. While Mr. Howard performed repair work on PLAINTIFF's car, Mr. Howard found he needed certain parts for the repairs.

30. Mr. Howard asked PLAINTIFF several times to use the SUBJECT VEHICLE to drive to a nearby auto parts shop and purchase the needed parts. PLAINTIFF made two trips to the auto parts shop without incident.

31. As this was occurring, upon information and belief, GRANER was casing the SUBJECT VEHICLE, and learned the SUBJECT VEHICLE had been reported stolen, although inaccurately so.

32. When Mr. Howard asked PLAINTIFF to make a third trip for parts, PLAINTIFF limped with his cane to the SUBJECT VEHICLE, but as soon as he sat down, GRANER boxed the vehicle in with his patrol vehicle, approached PLAINTIFF on foot, and ordered PLAINTIFF out. Without asking a single question, GRANER arrested PLAINTIFF and placed him in handcuffs.

33. Within seconds, defendants McCRARY and MELGOZA arrived and approached the SUBJECT VEHICLE.

34. PLAINTIFF repeatedly explained to GRANER and the other two defendants that the repair shop owner, Darrell Howard, was the owner of the SUBJECT VEHICLE, and that he was using it with Howard's permission.

35. Mr. Howard walked out of his garage to inquire and when he learned what the dispute was about, he explained to GRANER and the two other defendants that he, Mr. Howard, was the registered and titled owner of the SUBJECT VEHICLE, through his Ohio business, Howard's Auto Body. The fact that title was in name of "Howard's Auto Body" was confirmed at the scene by the three officers, through phone calls with station staff and records accessed on their patrol car computers. Mr. Howard presented GRANER with a valid Ohio driver's license to further corroborate his claim that he, Darrell Howard, was connected to the Ohio entity that borrowed his name.

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

36. Howard also informed GRANER that all of the personal items within the allegedly stolen vehicle were his.

37. Howard also told GRANER that before he was able to retrieve the SUBJECT VEHICLE from the deadbeat purchaser, he attempted to report it stolen, but the Pittsburg Police Department officer who responded told him that he could not submit a stolen vehicle report for a dispute over title, which was a "civil matter."  That officer's refusal to act was consistent with this Pittsburg Police Department Policy for handling disputes over possession or ownership of vehicles:

> **437.5   VEHICLES AND PERSONAL PROPERTY**
>
> Officers may be faced with disputes regarding possession or ownership of vehicles or other personal property. **Officers may review documents provided by parties or available databases (e.g., vehicle registration),** but should be aware that legal possession of vehicles or personal property can be complex. **Generally, officers should not take any enforcement action unless a crime is apparent. The people and the vehicle or personal property involved should be identified and the incident documented.**

(emphasis added).

38. Defendant McCRARY personally learned while at the scene that according to PLAINTIFF, Mr. Howard owned the SUBJECT VEHICLE, and Mr. Howard confirmed to him that he claimed ownership of the SUBJECT VEHICLE.  Defendant McCRARY appeared to appreciate that under those circumstances, it was inappropriate to arrest and charge PLAINTIFF with a crime, and he asked GRANER whether he wanted him to remove the handcuffs from PLAINTIFF.  McCRARY also told PLAINTIFF'S cousin he thought the officers' actions were a "total waste of time" caused by "bad clerical work by somebody," yet he made no effort to stop GRANER from consummating his senseless and illegal arrest of PLAINTIFF.

39. Defendant MELGOZA personally learned while at the scene that (a) both PLAINTIFF and his cousin disclaimed ownership of the SUBJECT VEHICLE and indicated it belonged to Mr. Howard, (b) Mr. Howard claimed he was the owner of the SUBJECT VEHICLE, (c) Howard previously attempted to report the SUBJECT VEHICLE was stolen but was told by another Pittsburg P.D. officer that a stolen vehicle report could not be accepted because the dispute over ownership was a civil matter, and (d) the titled owner of the SUBJECT VEHICLE was in fact "Howard's Auto Body," the business name that Mr. Howard previously gave him.

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

40. Defendant MELGOZA clearly understood that the stolen vehicle report could not be trusted or relied upon, stating, "I don't know how the hell this dude that reported it as stolen [Mr. Morehouse] did it."

41. In short, all three defendants at the scene learned that the stolen vehicle report was unreliable because it was submitted by an individual who was not the titled or registered owner of the SUBJECT VEHICLE, and because there was clear evidence that Mr. Howard, and not Mr. Morehouse, was connected to the titled and registered owner of that SUBJECT VEHICLE.

42. Despite this uncertainty, despite the fact that it was Mr. Howard, not PLAINTIFF, that was claiming ownership of the SUBJECT VEHICLE, and despite the fact that Howard's account of his earlier conversation with a fellow Pittsburg police officer reminded them of the need for police to avoid taking criminal action to resolve civil disputes, GRANER remained intent on arresting PLAINTIFF, and neither of the other two officers did anything to stop him. To make matters worse, defendant MELGOZA drove PLAINTIFF to the police station on GRANER's behalf.

43. GRANER spoke to defendant VAN ROOYEN over the phone and, upon information and belief, conveyed all of the aforementioned information to him, but VAN ROOYEN ratified the decision to falsely arrest PLAINTIFF. There is no recording of their conversation because GRANER, ignored his department's policy No. 425.5.2 and turned off the audio of his body-worn camera during his conversation with VAN ROOYEN

44. GRANER arrested PLAINTIFF and submitted a report falsely accusing plaintiff of violating Penal Code Section 496d(a), Buying or Receiving Stolen Vehicle or Equipment.

45. When he learned that he was going to be taken to the jail and separated from his service dog, PLAINTIFF was panicked, and pleaded with GRANER not to proceed, but GRANER coarsely dismissed PLAINTIFF'S concerns, telling him, "It's not a big deal, man." To GRANER, being hauled to a jail in handcuffs, being charged with a crime he did not commit, living for months in dread of a criminal prosecution, with the attendant financial and reputational harm, and fearing a jail sentence, was "not a big deal."

46. PLAINTIFF asked GRANER if he could be cited and released so that he need not be separated from his dog, but GRANER claimed that was not possible.

47. GRANER'S claim was false; he stated at the scene that he would be charging PLAINTIFF with a misdemeanor offense, and Pittsburg P.D.'s Policy Manual, Section 411.3.1 states in relevant part, "In most cases an adult arrested for a misdemeanor offense may be released in the field on a citation in lieu of physical arrest when booking and fingerprinting is not practicable or immediately required provided the individual can be satisfactorily identified, there is no outstanding arrest warrant for the individual and none of the below described disqualifying circumstances are present (Penal Code § 853.6; Penal Code § 1270.1)."

48. Rather than citing PLAINTIFF at the scene, GRANER chose to transport him to the Pittsburg Police station and force him to leave his service dog and cane behind.

49. PLAINTIFF was released after about one hour and provided with notice that he should appear in court on December 10, 2024. He appeared as ordered, and was advised by court personnel that no case was pending against him.  Upon information and belief, the Pittsburg Police Department did not submit its report to the District Attorney before December 31, 2024.

**FIRST CAUSE OF ACTION UNDER 42 U.S.C. § 1983 FOR  UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANTS PITTSBURG, GRANER, McCRARY, MELGOZA, VAN ROOYEN AND DOES 1 TO 10.**

50. PLAINTIFF realleges each and every paragraph as if fully set forth herein.

51. GRANER, McCRARY, MELGOZA, and VAN ROOYEN, acting under the color of state law in their individual and personal capacity, deprived PLAINTIFF of the rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, to not be deprived of liberty without due process of law, by subjecting him, or through deliberate indifference allowing others to subject him, to improper arrest without probable cause.

52. To be in violation of Penal Code Section 496d(a) (Buying or Receiving stolen vehicle or equipment), there must be proof of three elements (1) the vehicle was stolen, (2) the charged person must have dominion or control over the vehicle, and (3) that person must act while "knowing the property to be stolen." *In re Anthony J* (Cal. App. 2004) 117 Cal.App. 4th 718, 728.  The "mere presence or access" to a vehicle is not sufficient to prove dominion or control.

53. GRANER, McCRARY, MELGOZA, and VAN ROOYEN had no reasonable basis to believe that *any* of the three elements listed above were supported by evidence.

9

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

54. The officers knew there was insufficient evidence to conclude the SUBJECT VEHICLE was stolen.  The SVS stolen vehicle report was contradicted when Mr. Howard advised all three offices at the scene that his company was the titled and registered owner of the SUBJECT VEHICLE - a fact that they were able to confirm as true through independent sources.

55.  PLAINTIFF was **not** exercising dominion or control over the SUBJECT VEHICLE; he made clear he was using it with Mr. Howard's permission.  Mr. Howard claimed ownership and advised them that the personal property inside the car was his.  No reasonable officer could have concluded PLAINTIFF was exercising dominion or control over the SUBJECT VEHICLE.

56. There were **no** facts known to GRANER, McCRARY, MELGOZA, and VAN ROOYEN to even suggest PLAINTIFF knew the SUBJECT VEHICLE was stolen, or even the subject of disputed ownership.  PLAINTIFF was a completely innocent bystander who believed, _correctly_, that Mr. Howard was the owner of the SUBJECT VEHICLE.

57. As a result of GRANER, McCRARY, MELGOZA, and VAN ROOYEN's deliberate indifference to PLAINTIFF's constitutional rights, PLAINTIFF was deprived of those rights, and suffered emotional pain and suffering, anxiety, confusion, and other damages in an amount not yet ascertained but to be proven.

58. GRANER, McCRARY, MELGOZA, and VAN ROOYEN subjected PLAINTIFF to this wrongful conduct knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of PLAINTIFF.   The conduct of the aforementioned defendant entitles PLAINTIFF to punitive damages and penalties allowable under 42 USC § 1983.

**SECOND CAUSE OF ACTION UNDER CALIFORNIA CIVIL CODE § 52.1 (BANE ACT) AND GOVERNMENT CODE SECTION 815.2(a) AGAINST DEFENDANTS PITTSBURG, GRANER, McCRARY, MELGOZA, VAN ROOYEN AND DOES 1 TO 10.**

59. PLAINTIFF realleges each and every paragraph as if fully set forth herein.

60. Under California Civil Code Section 52.1, if a person interferes by threats, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, any individual whose exercise or enjoyment of rights

10

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

has been interfered with may bring a civil action for damages.

61. Using threats, intimidation, and coercion, including but not limited to GRANER putting his hand on his gun and removing the gun from its holster, albeit briefly, GRANER handcuffing PLAINTIFF, GRANER arresting PLAINTIFF without probable cause with the approval of VAN ROOYEN, and MELGOZA transporting PLAINTIFF to be booked and cited, the individual police officer defendants interfered with PLAINTIFF's rights and privileges to be free of unlawful detention and excessive force secured under the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of California and the California Constitution. GRANER, McCRARY, MELGOZA, and VAN ROOYEN subjected PLAINTIFF to such wrongful conduct knowingly, maliciously, and/or with conscious and reckless disregard for whether the rights and safety of PLAINTIFF would be violated by his acts and/or omissions.

62. As a direct and proximate result of the aforementioned defendants' acts and/or omissions as set forth above, PLAINTIFF sustained injuries and damages as set forth in this complaint.

63. The aforementioned acts were committed by GRANER, McCRARY, MELGOZA, and VAN ROOYEN while in the course and scope of their employment with defendant PITTSBURG.  Defendant PITTSBURG is vicariously liable for harm caused by its employees and agents, including the aforementioned defendants, pursuant to California Government Code Section 815.2(a) and California common law.

64. GRANER, McCRARY, MELGOZA, and VAN ROOYEN's conduct entitles PLAINTIFF to an award of actual damages, punitive damages and exemplary damages up to three times actual damages, a civil penalty of $25,000, costs, and attorneys' fees pursuant to California Civil Code Sections 52 and 52.1.  No punitive damages are sought against defendant PITTSBURG.

**THIRD CAUSE OF ACTION UNDER CIVIL CODE SECTION 51.7 (RALPH ACT) AND GOVERNMENT CODE SECTION 815.2(a) AGAINST DEFENDANTS PITTSBURG, GRANER, McCRARY, MELGOZA, VAN ROOYEN AND DOES 1 TO 10.**

65. PLAINTIFF realleges and incorporates herein by reference the previous allegations as if fully set forth herein.

66. Pursuant to California Civil Code Section 51.7 (the Ralph Act), all persons within the

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, "on account of" their race.

67. GRANER, McCRARY, MELGOZA, and VAN ROOYEN and DOES 1 to 10 violated the Ralph Act when, "on account of " PLAINTIFF's race they racially profiled and targeted PLAINTIFF, subjecting him to unlawful detention and false arrest based on the fact that PLAINTIFF is African American.  GRANER betrayed his racially-biased thinking by telling plaintiff that the arrest, booking and submission of a criminal report accusing him of was "not a big deal," something he never would have said to a white man or woman.

68. The right to be free from racially-motivated violence or intimidation under the Ralph Act includes the right to be free of false claims or reports to a law enforcement agency of unlawful activity or activity that requires law enforcement intervention, when the person making the report knows that the claim or report is false, or makes the claim or report with reckless disregard for its truth or falsity. The Contra Costa District Attorney's office is a "law enforcement agency" under California law, including for the purposes of the Ralph Act.  Thus, GRANER, McCRARY, MELGOZA, and VAN ROOYEN and Does 1 to 10 violated the Ralph Act when they submitted to the Contra Costa District Attorney a report that falsely alleged PLAINTIFF engaged in unlawful activity, knowing that the report was false, or with reckless disregard for its truth or falsity.

69. Pursuant to California Government Code Section 815.2, defendant PITTSBURG is legally liable for all damages suffered as a result of the aforesaid actions of GRANER, McCRARY, MELGOZA, and VAN ROOYEN, and the DOE defendants.

**FOURTH CAUSE OF ACTION FOR COMMON LAW FALSE ARREST (GOVT. CODE §§ 815.2, 820) AGAINST PITTSBURG, GRANER, McCRARY, MELGOZA, VAN ROOYEN AND DOES 1 TO 10.**

70. PLAINTIFF realleges each and every paragraph as if fully set forth herein.

71. GRANER, McCRARY, MELGOZA, VAN ROOYEN and DOES 1 TO 10 arrested PLAINTIFF without a warrant and without probable cause to believe PLAINTIFF had violated Penal Code Section 496d(a), or any other criminal law.

72. As a proximate result of the aforementioned defendants' intentional and wrongful conduct, PLAINTIFF suffered damages.

12

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

73. The aforementioned acts were committed by GRANER, McCRARY, MELGOZA, and VAN ROOYEN while in the course and scope of their employment by defendant PITTSBURG.  Defendant PITTSBURG is vicariously liable for the common law torts of its employees and agents, including the aforementioned individual defendants, pursuant to California Government Code Section 815.2(a) and California common law.

74. The above-recited actions of GRANER, McCRARY, MELGOZA, and VAN ROOYEN were done with malice, fraud, or oppression, and in reckless disregard of the plaintiff's rights.  As a result, pursuant to California Civil Code § 3294, PLAINTIFF also is entitled to and seeks punitive damages against GRANER in his individual capacity.

**FIFTH CAUSE OF ACTION BASED ON COMMON LAW NEGLIGENCE (CAL. GOVT. CODE §§ 815.2, 820) AGAINST PITTSBURG, GRANER, McCRARY, MELGOZA, VAN ROOYEN AND DOES 1 TO 10.**

75. PLAINTIFF realleges each and every paragraph as if fully set forth herein.

76. GRANER, McCRARY, MELGOZA, VAN ROOYEN and DOES 1-10 owed PLAINTIFF the duty to act with reasonable care and skill in the execution and enforcement of their duties pursuant to California Government Code Sections 820 and 844.6(d), and California Civil Code Sections 1708 and 1714(a).

77. GRANER, McCRARY, MELGOZA, VAN ROOYEN and DOES 1-10 negligently failed to follow their training and departmental procedures in numerous respects.

78. The Pittsburg Police Department Policy Manual outlines the standard Law Enforcement Code of Ethics:

**LAW ENFORCEMENT CODE OF ETHICS**
As a law enforcement officer, my **fundamental duty is to serve; to safeguard lives** and property; **to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against abuse or disorder; and to respect the constitutional rights of all to liberty, equality and justice.**

(emphasis added).

79. GRANER, McCRARY, MELGOZA, and VAN ROOYEN clearly and negligently failed to uphold the basic ethical standards required of a law enforcement officer. Rather than protect the weak and the peaceful, GRANER, McCRARY, MELGOZA, and VAN ROOYEN were the perpetrators of oppression, intimidation, and abuse when they falsely arrested PLAINTIFF. GRANER, McCRARY,

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

MELGOZA, and VAN ROOYEN did not respect the constitutional rights of PLAINTIFF, they instead violated them and deprived PLAINTIFF of liberty, equality, and justice.

80. The Pittsburg Police Department Policy Manual has specific policies related to arrest authority which adhere to Penal Code § 830.1 and Penal Code § 836:

> **101.3. PEACE OFFICER POWERS**
> Sworn members of this department are authorized to exercise peace officer powers pursuant to applicable state law.
> ***
> **CALIFORNIA PENAL CODE § 836**
> 836. (a) A peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted by Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur:
> (1)  **The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence.**
> (2)  The person arrested has committed a felony, although not in the officer's presence.
> (3)  **The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed.**

(emphasis added).

81. GRANER, McCRARY, MELGOZA, and VAN ROOYEN had no probable cause to arrest PLAINTIFF for a violation of Penal Code Section 496d(a) (Buying or Receiving stolen vehicle or equipment). Not only were they negligent in failing to follow department policies, but they also failed to follow the requirements for making a lawful arrest stated in Penal Code Section 836.

82. GRANER, McCRARY, MELGOZA, and VAN ROOYEN also negligently failed to follow Pittsburg Police Department Policy No. **437.5  VEHICLES AND PERSONAL PROPERTY,** quoted above.  They all understood that, at most, title to the SUBJECT VEHICLE was a civil dispute over whether a sale from Howard to Morehouse was enforceable. Rather than follow the policy that directs officers to make no arrest unless a crime is "apparent," GRANER, McCRARY, MELGOZA, and VAN ROOYEN willfully ignored the facts and treated a civil dispute as a criminal matter.

83. As a direct and proximate result of the aforementioned negligence, PLAINTIFF sustained serious and permanent injuries and damages, and is entitled to relief from each and every defendant.

84. The aforementioned acts were committed by defendants while in the course and scope of their employment by defendant PITTSBURG. Defendant PITTSBURG is vicariously liable for the common law torts of its employees and agents, including the aforementioned individual defendants,

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

pursuant to California Government Code Section 815.2(a) and California common law.

85. The above-recited actions of the individual defendants were done with malice, fraud, or oppression, and in reckless disregard of PLAINTIFF's rights. As a result, pursuant to California Civil Code § 3294, PLAINTIFF also is entitled to and seeks punitive damages against all individual defendants in their individual capacities.

**SIXTH CAUSE OF ACTION BASED ON COMMON LAW NEGLIGENCE (CAL. GOVT. CODE §§ 815.2, 820) AGAINST LESNYAKOV AND DOES 11-20.**

86. PLAINTIFF realleges and incorporates herein by reference the previous allegations as if fully set forth herein.

87. Defendants LESNYAKOV and Does 11-20 owed PLAINTIFF the duty to act with reasonable care and skill in the execution and enforcement of his duties pursuant to California Government Code Sections 820 and 844.6(d), and California Civil Code Sections 1708 and 1714(a).

88. Defendant LESNYAKOV and Does 11-20 violated multiple, mandatory departmental policies and procedures and were negligent in accepting and publishing Anthony Morehouse's report that the SUBJECT VEHICLE as stolen.  The CHP policies and procedures include the following:

**CHAPTER 3: STOLEN, EMBEZZLED, OR RECOVERED VEHICLE/VESSEL PROCEDURES**
2.    REQUIRED REPORTS.
    a.   Stolen or Embezzled Vehicle Report
        (1) ...
        (2) **Departmental personnel receiving a vehicle/component theft report** or a vehicle embezzlement report **shall attempt to determine the validity of the report. When there is reason to believe it is not a legitimate report, essential information is being withheld, or a theft does not appear to exist; the individual shall be cautioned as to the criminal consequences of making a fraudulent report. (Refer to Section 10501 CVC and Section 148.5 PC.)** However, if the individual insists, the report shall be accepted. **Before initiating routine procedures, such as an Area broadcast or entry into the Department of Justice (DOJ) Stolen Vehicle System (SVS) on a questionable report, the commander shall cause an investigation to be made for the purpose of determining the validity of the reported theft.** The appropriate Division Investigative Services Unit (ISU) should be requested to assist in the determination. **If the report is determined to be fraudulent, criminal prosecution for the violation of the applicable CVC or PC section should be initiated.**

(emphasis added).

89. Defendant LESNYAKOV did not follow these mandatory protocols, nor did his

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

Commander. LESNYAKOV apparently did nothing to fulfill the duty to determine the validity of the report. After checking relevant databases to complete the stolen vehicle report, LESNYAKOV knew that the titled and registered owner of the SUBJECT VEHICLE was Howard's Auto Body in Ohio, **not** Mr. Morehouse in California, so he had ample reason to believe the report was not legitimate, yet still he did not make further inquiry. LESNYAKOV did not ask Mr. Morehouse for evidence of ownership, such as a purchase contract, agreement, emails, text messages, payments, bills, receipts, processing documents, registration or title transfer documents, or insurance registration or coverage for the SUBJECT VEHICLE, nor did Mr. Morehouse present any of those things. LESNYAKOV also did not investigate Mr. Morehouse, his driving history, or records, to cross-check Mr. Morehouse's credibility. Finally, LESNYAKOV did not locate and discuss with Mr. Howard the status of the SUBJECT VEHICLE's ownership.

90. Defendant LESNYAKOV also was required to caution Mr. Morehouse of the criminal consequences of making a fraudulent report, but did not. Had he done so, Mr. Morehouse likely would have understood the need to provide complete, accurate, and truthful information.

91. Defendant LESNYAKOV also failed to follow mandatory procedures when he entered a report that the SUBJECT VEHICLE was stolen into databases that he knew would be accessed by police agencies around the state and country. He did so the same day he received the report - June 16, 2024 - making it plain he did no investigation beforehand. There is also no indication that any "commander" conducted an investigation to determine the validity of the reported theft or that the ISU was requested to assist.

92. The failures by LESNYAKOV and Does 11-20 to investigate and otherwise follow CHP procedures and protocols regarding a stolen vehicle complaint was unreasonable and negligent.

93. As a direct and proximate result of the aforementioned negligence, PLAINTIFF sustained serious and permanent injuries and damages, and is entitled to relief from each and every defendant.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for a judgment against defendants, and each of them, as follows:

(1) For general damages, including to compensate him for physical pain and suffering and

16

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116

emotional distress, according to proof at the time of trial;

(2) For special damages, including the cost of medical care, according to proof at the time of trial;

(3) For punitive and exemplary damages against the individual defendants as indicated above, commensurate with the acts complained of herein;

(4) For actual damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 12205, and federal law;

(5) For actual damages, punitive and exemplary damages against the individual defendants, civil penalties, costs and attorneys fees pursuant to California Civil Code §§ 52.1 and 52.7, and

(6) For such other and further relief and damages as the Court may deem just and proper.

DATED: September 17, 2025          BRENT & FIOL, LLP

By:_____
          David L. Fiol
          *Attorneys for Plaintiff  Daymond Maurice Dixon*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on each and all of the causes of action set forth in this Complaint.

DATED:  September 17, 2025          BRENT & FIOL, LLP

By:_____
          David L. Fiol
          *Attorneys for Plaintiff  Daymond Maurice Dixon*

FIRST AMENDED COMPLAINT FOR DAMAGES; JURY DEMAND    Case No. 3:25-cv-6116